### Simmons v. Stewart.

(Decided March 20, 1923.)

### Appeal from McCracken Circuit Court.

1. Parent and Child—Father is not Entitled to Wages Nor Liable for Necessaries Furnished to Emancipated Child.—Where a parent expressly emancipates his child, he cannot thereafter claim the wages earned by the child, nor is he liable for necessaries furnished to him.

2.  Parent and Child—Child Held Emancipated.—A 17 year old boy, who was unable to get along with his stepmother and entered into an agreement with his father whereby the father gave the son permission to make his own living and have all the wages earned by him, to which arrangement the son consented and relinquished the father from further obligation to look after him, and thereafter obtained employment, received the wages therefor, and converted them to his own use, was emancipated.

3.  Parent and Child—Infant Who Works for Wages or Otherwise Supports Himself and Pays His Expenses with Parent's Consent is "Emancipated."—An infant is emancipated when he works for wages or otherwise supports himself and pays his board and other expenses with the consent of the parent, and, if the child at the time is of sufficient age and physical strength to support himself, his parent is relieved of the necessity of further caring for him, and is not liable for surgical services rendered to him.

4.  Parent and Child—Infant too Young to Take Care of Himself Cannot be Emancipated.—The doctrine of emancipation does not apply in a case where the child was not physically or mentally able to take care of himself, or by reason of his tender years was without discretion sufficient to enable him to care for himself.

ALEXANDER & MIDDLETON and L. B. ALEXANDER for appellant.

A. M. NICHOLS and JACK E. FISHER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Reversing.

Appellant R. B. Simmons is the father of Sam Simmons, a boy about seventeen or eighteen years of age. P. H. Stewart is a regularly practising physician and surgeon. Sam Simmons became very ill and his condition required a surgical operation. He was not living in the home of his father at that time. His sister and Dr. Rollings took him to Dr. Stewart for the operation. Before doing so they obtained from the father, R. B. Simmons, permission to have the operation performed. It reads:

"To WHOM IT MAY CONCERN:

"This is to certify that I am the father of Sam S. Simmons, who is seventeen years old, and is now ill with some unknown disease at the home of Dr. J. D. Rollings and it is thought, that it is perhaps necessary to have a surgical operation performed upon him; and owing to peculiar family affairs, it is necessary to give Armonia Snow, his sister, authority to use her judg-

ment as to the advisability of the said operation. Now I hereby give her that authority with the reservation that Dr. Bob Overby shall have nothing to do with it, and that I will not be responsible for the surgeon's fee or the hospital bill.

"R. B. Simmons."

This writing was not shown to Dr. Stewart until after the operation. There was nothing said about who should pay the surgeon for his services and no charge fixed by the surgeon for the services. The operation was performed by Dr. Stewart. Later he sent a bill for $200.00 to appellant for his services to the son. Appellant declined to pay the bill and Dr. Stewart instituted this action against him to recover $200.00 for his services, upon the theory that a father is liable for necessaries furnished his infant child, including medical attention and surgical operations. It is admitted that young Simmons required the surgical operation performed by Dr. Stewart—that is was necessary to save his life and that it was a success.

Appellant Simmons defended upon the ground that some two years before the operation was performed he had by agreement with his son emancipated him and allowed him to go out in the world and engage himself to other persons and perform labor for them and to receive and have to his sole and separate use all wages earned by him, and that in pursuance to such emancipation young Simmons had left the parental roof and for two years had been earning his own livelihood and receiving and converting to his own use and benefit all wages earned by him. The trial court directed the jury to find a verdict for the doctor, and Simmons appeals. He insists (1) that the court erred in excluding competent and relevant evidence; (2) in giving a peremptory instruction to find for Dr. Stewart, and (3) the verdict did not authorize the judgment.

It may be stated as the settled law of this state that where a parent expressly emancipates his child he can not thereafter claim the wages earned by the child, nor is he liable for necessaries furnished him. Rounds Bros. v. McDaniel, 133 Ky. 669. The only question, therefore, in this case necessary for determination is: Did the father expressly emancipate young Simmons within the meaning of the law? According to the evidence appellant had married a second wife—stepmother to young Simmons. She and young Simmons could not

get along, and the father found it necessary, as he thought, to the peace of his home that he require his son to go elsewhere to live. Thereupon the father and son entered into an agreement whereby the father gave to the son permission to go out into the world and make his own living and to have all wages earned by him. To this arrangement the son consented and relinquished his father from further obligation to look after him. He took employment and received wages and converted the same to his own use. His father claimed no part thereof. This continued several months before the son became sick. The principle is thus stated in 20 R. C. L., p. 611: "Where there has been a complete emancipation by express agreement a minor son occupies the same legal relation to his father as if he had arrived at full age. The legal duty of the parent to maintain and support him and defray his necessary expenses is extinguished, and so is the right of the parent to claim the services and wages of the child. The father is bound by it as he is by any other contract, and cannot afterward revoke the agreement." In dealing with this subject and in stating the rule as to what constitutes emancipation, 29 Cyc., p. 1673, reads: "Emancipation of a minor occurs by the voluntary act of the parent in surrendering the rights or renouncing the duties of his position, or in some way conducting himself in relation thereto in a manner inconsistent with any further performance of them. The emancipation may be express or implied, or in writing, or oral. The test to be applied is that of the preservation or destruction of the parental and filial relations." It appears to be the general rule that an infant is emancipated when he works for wages or otherwise supports himself and pays his board and other expenses with the consent of the parent. In every case where the parent releases his control and authority over the child and consents for him to go forth and make his own living, to which the child agrees, at the time being of sufficient age and physical strength to take care of and support himself, his parent is relieved of the necessity of further caring for the child and is not bound for necessaries furnished to him. This is upon the theory that the infant who is able to earn a living and has consented to do so and has been earning and receiving wages is able to pay for such necessaries, and that the father who has relinquished his right and claim to the services of the child, is no longer bound to support or take care

of him. This, of course, would not apply in a case where the child was not physically or mentally able to take care of himself or where he by reason of his tender years was without discretion sufficient to enable him to manage to support himself.

Aside from appellant Simmons' written declaration before the operation was performed that he would not be responsible for the fees of the surgeon performing the operation, we must hold that he is not legally liable to the surgeon for the bill. Undoubtedly the son had been emancipated by his father and had accepted the emancipation. He had gone out in the world upon his own account and had been selling his services to others and receiving wages which he turned to his exclusive use. This was an emancipation both within the letter and the spirit of the law. The father was not, therefore, liable for the necessaries furnished the son, including the surgical operation.

For the reasons indicated the motion for appeal is sustained, appeal granted and the judgment is reversed for proceedings consistent herewith.

Judgment reversed.