FRANCIS BOEHM, Plaintiff, *v.* C. M. GRIDLEY & SONS et al., Defendants.

Supreme Court, Special Term, Albany County, August 8, 1946.

**114**

*Herbert F. Hastings, Jr.,* for William Boehm, defendant.

*Alexander Grasso* for plaintiff.

BOOKSTEIN, J. Plaintiff brings this action to recover damages for personal injuries sustained as the result of a collision, which occurred on or about August 31, 1945,. between a motor vehicle owned by defendant, C. M. Gridley & Sons, and operated by defendant Henry J. Jurek and a motor vehicle owned by Michael Boehm and operated by the defendant William Boehm.

Defendant William Boehm moves for judgment dismissing the complaint, upon the complaint and affidavits, pursuant to rule 107 of the Rules of Civil Practice, which authorizes such procedure, among other situations, when the complaint and supporting affidavit or affidavits, tend to show: " 9. That the cause of action did not accrue against the defendant because of his infancy or other disability."

It is the law of this State that an action for personal injuries may not be maintained against a parent by an unemancipated minor. (*Sorrentino* v. *Sorrentino,* 248 N. Y. 626; *Cannon* v. *Cannon,* 287 N. Y. 425.)

The converse of this rule has not yet been declared as the law of this State, so far as a search of the reported decisions discloses.

A dictum to that effect, however, is found in *Lo Galbo* v. *Lo Galbo* (138 Misc. 485, 487).

In *Crosby* v. *Crosby* (230 App. Div. 651) we find a situation most nearly analogous to the case at bar.

There, as here, the mother sued her infant son.

There, as here, there was nothing in the complaint, to show the relationship of the parties, such facts being revealed by the affidavits in support of the motion for dismissal.

In this case, the affidavits reveal that one Michael Boehm, husband of the plaintiff, and father of the infant defendant, William Boehm, was the owner of the motor vehicle in which plaintiff was injured; that at the direction of the father, the infant defendant, William Boehm was driving his mother, the plaintiff, to visit some friends, and while so engaged, the collision occurred in which plaintiff, the wife of the owner and the mother of the infant defendant driver of her husband's motor vehicle, was injured.

In the *Crosby* case (230 App. Div. 651, 653, *supra*) a motion, similar to the one made here, was made on behalf of the infant defendant. In that case, the motion was denied, on the grounds, that " The issue of emancipation may be litigated upon the trial for ' whether there has been an emancipation is a question of fact but what is emancipation is a question of law.' "

Of course, a minor child may be emancipated by the parents' consent, express or implied. (*Stanley* v. *National Union Bank*, 115 N. Y. 122.)

In the *Crosby* case (230 App. Div. 651, *supra*) the court said, at page 652: " Plaintiff's affidavit in opposition states facts from which it might be found that defendant was emancipated; that he earned from twenty-five to twenty-eight dollars per week, paid his own living expenses, used the surplus of his wages as he saw fit, had a deposit in a bank in his own name, and purchased the automobile in which they were riding at the time of the accident."

Under those circumstances, the court, in effect, held that it could not declare, as a matter of law, that the infant defendant was not emancipated, but that it should be left to a jury to determine, as a question of fact, whether the infant defendant was or was not emancipated.

In the instant case, the father of the infant defendant says, under oath, " That my son, William Boehm, is a school boy, subject to my parental [*sic*] control, lives with me at the above address and I provide for all his necessities."

In this case the infant defendant, says, under oath: " That on August 31st, 1945, I was a school boy, and I was living with my parents at 2178 Beverly Street, Schenectady. That I am

supported by my father who provides for all my necessities.''

Uncontradicted, these statements would inevitably lead to a conclusion, as a matter of law, that the infant defendant, at the time of the collision, which gave rise to this cause of action, was an unemancipated infant.

How are these assertions of the father and son, met by their wife and mother, the plaintiff?

In her answering affidavit, sworn to January 16, 1946, she says: '' That William Boehm is the son of the plaintiff; that he is 17 years of age and is in Draper High School in the senior class; that said William Boehm is employed during vacation periods and also after school, and William Boehm earns sufficient moneys to support himself; that said William Boehm has been working in his spare time and during vacations since he was fifteen years of age.''

Can these assertions be said to raise a triable issue of fact, on the question of the emancipation of the infant defendant?

There is no denial, direct or indirect, of the assertions of the father and son. There is not stated the name of a single employer of the infant defendant, the nature of the employment, the duration thereof or the compensation therefor, from which a conclusion or inference can be drawn that the infant defendant '' earns sufficient moneys to support himself ''.

There is merely the bald conclusion stated by plaintiff that the infant '' earns sufficient * * * to support himself ''. Boys who do some work after school or during vacation are legion, but it can hardly be said that, for that reason, they are emancipated.

There are no factual statements, either in contradiction of the statements of the infant defendant and of his father showing nonemancipation or in support of the mother's attempted claim of emancipation.

In support of her claim of emancipation, the mother has filed a certified copy of a '' Standard Employment Certificate, for a minor 16 to 18 years of age,'' dated November 1, 1944.

An examination of this certificate shows the date of birth of the infant defendant to be October 25, 1928, so that at the date of the accident the infant defendant was sixteen years of age and the certificate in question was issued about one week after he had attained his sixteenth birthday.

The certificate has an appropriate place in which to indicate whether such certificate is the first certificate ever issued or a subsequent one, and if a subsequent one, what its number is, of the total number issued to the applicant. In that portion

thereof, it is indicated that the certificate in question was the first one issued to the infant defendant. It may be presumed also that it was the only one ever issued, as it is safe to say, if there had been other or later ones, they would have been produced in opposition to this motion.

The certificate in question authorized the employment of the infant defendant as a grocery clerk by Super Markets, Inc., 2526 Broadway, Schenectady, New York.

However, defendant, Boehm, has produced proof from Super Markets, Inc., to the effect that the infant defendant worked for the concern for a short period only, and on November 4, 1944, received $9.40 and on November 11, 1944, $9.80, or a total of $19.20, in earnings.

So far as employment certificates are concerned, therefore, there is no evidence that the infant defendant was ever employed, except for the short period of employment by Super Markets, Inc.

Under sections 629 and 637 of the Education Law and sections 130 and 131 of the Labor Law, the infant defendant could only have been lawfully employed prior to attaining his sixteenth birthday by obtaining a vacation work permit and since that time by obtaining a standard employment certificate.

No facts are shown with reference to the infant defendant under which either a special employment certificate or a farm work permit employment certificate could have been issued and no claim is made that one of either of those classes of work permits was ever issued.

A careful reading of the applicable provisions of the Labor Law (§§ 130–133, 142–146) and of the Education Law (§§ 629–639) demonstrate that if the infant defendant was employed between his fifteenth and sixteenth birthdays, his employment could have been lawful only under a vacation work or farm work permit, except for farm work for his parents while not in attendance at school for which a farm work permit was not required. No claim is advanced that any such permit was ever granted or that any farm work was engaged in by him, and it must, therefore, be presumed that the infant defendant was not lawfully employed, if employed at all, between his fifteenth and sixteenth birthdays.

After the infant defendant attained his sixteenth birthday on October 25, 1944, he was entitled to the issuance of a standard employment certificate.

In no event was he entitled to a special employment certificate, as he does not fall within the category of those entitled to such a permit.

The only employment certificate claimed by plaintiff to have been issued was a standard work certificate for his employment by Super Markets, Inc., under which the infant earned a total of $19.20.

To hold, on the showing made on this motion, that there is a triable issue of fact as to whether the infant defendant was emancipated or not, would be sacrificing substance to form. On the contrary, the facts disclosed by the moving and opposing papers not only justify, but require a holding, as a matter of law, that the infant defendant at the time of the collision involved in this action, was not emancipated.

In *Cannon* v. *Cannon* (287 N. Y. 425, *supra*) in which the Court of Appeals reaffirms the rule of the *Sorrentino* case (248 N. Y. 626, *supra*) that court, at page 428 *et seq.*, said: " The law requires of parents that they provide care, maintenance and guidance for their unemancipated minor child. To that end they are entitled to his custody. Such duties and rights may be enforced by legal process. Thus has the law recognized in the family something more than a social unit, something more practical than a spiritual concept. It has sanctioned the family relationship — particularly the relationship of parent and child — as the basis for regulating those reciprocal obligations between parent and child which may be the subject of legal enforcement.

" In the process of rearing a child and the fulfillment of the legal duties of care, maintenance and guidance, the conduct of the parents toward the child is of necessity affected by the parental relation. We know that family unity is not created by law. But, as we have seen, the law does not fail to recognize family unity as a factor in human conduct and relationship. As to the child — what he may expect from his parents and what he owes to them as a matter of filial duty differ widely from his rights and duties in his relations to those not *in loco parentis*. As to the parents — the law which imposes upon them the duty to support and discipline a minor child, and to prescribe a course of conduct designed to promote his health, education and recreation, accords to the parents a wide discretion. In the exercise of that discretion and the performance of duties imposed by law through no choice by the parents, they are held to no higher standard of care than the measure of their own physical, mental and financial abilities to provide for the well-being of their child. Lack of means, physical weakness or mental incapacity may cause parents to tolerate conditions in the family home which are unsafe and which might afford a

basis for liability to one coming to the premises as an invitee or licensee. Not yet, however, have our courts granted an unemancipated child — whom the law decrees to be a member of that household — the right to hold his parents in damages for unintended personal injuries resulting from such conditions. Indeed, if within the wide scope of daily experiences common to the upbringing of a child a parent may be subjected to a suit for damages for each failure to exercise care commensurate with the risk — for each injury caused by inattention, unwise choice or even selfishness — a new and heavy burden will be added to parenthood. * * * In the absence of statutory sanction, we are not prepared, in cases where wilful misconduct by the parent is not a factor, to inject the disruptive risk of tort liability between parents and their unemancipated children, in which relationship both parents and children — by nature and by law — have reciprocal duties to perform which still make for family unity."

It is my conclusion that the reasons and principles set forth above, which prompted the Court of Appeals to deny to an unemancipated child a right of action against the parents for nonwillful injuries caused by their acts which, if done by others, might constitute a breach of legal duty, apply with equal vigor and force to an action of similar nature by a parent against his or her unemancipated child.

Accordingly, the action of the plaintiff mother against her son, the infant defendant, does not lie and the motion of the infant defendant, Boehm, dismissing the complaint as to him, is granted, but, without costs.

All papers are transmitted herewith to the attorney for the defendant, Boehm, for filing, upon entry of the order to be submitted by him, pursuant to this opinion.